UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**GILBERT BROWN**                                                                                    **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO. 1:22-CV-P99-GNS**

**JEFF PENICK *et al*.**                                                                          **DEFENDANTS**

### MEMORANDUM OPINION

This is a *pro se* prisoner 42 U.S.C. § 1983 civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

**I.**

Plaintiff Gilbert Brown indicates that he is incarcerated as a convicted prisoner at Todd County Detention Center (TCDC).[1] He names as Defendants TCDC Jailer Todd Penick in both his official and individual capacities and Todd County "Mayor" Arthur Green in his official capacity only.[2]

Plaintiff makes the following allegations in the complaint:

Claim 1: October 14, 2021 I was arrested in Todd County and upon arrest I was never given the opportunity to speak to pretrial. I informed several officers and they said I had already seen pretrial. I believe a jailer named Wilson spoke for me without my permission.

Claim 2: October 14, 2021 when I was arrested I was asked to take a urine drug test for the jail. I asked what the purpose was for and they say in house and for my safety. To make sure I hadn't done any heroin or fentynal. The next week my probation and parole officer come to drug screen me. To my surprise he was already told about the in house drug screen without my permission. I feel like that was a violation of my privacy and information I didn't release.

---

[1] Plaintiff did not indicate whether he is a convicted prisoner or a pretrial detainee on the complaint form. However, after the Court directed him to provide this information, he indicated that he is a convicted prisoner (DN 10).
[2] The official website of the City of Elton, Kentucky, which is located in Todd County, indicates that Defendant Green is actually the Mayor of the City of Elkton. *See* http://elktonky.com.

Claim 3: In the first couple of weeks of January 2022 I caught Covid from what I believe a jailer. There was several jailers who caught Covid and was absent from work. Then I got extremely sick and wrote the nurse notifying her of my sickness. She checked my temperature and vitals and put me write back in the cell giving me Mucinex and Tylenal, but never testing me for corona or separting me. Everyone in the cell got sick.

Claim 4: In June 2022 I was moved to upper B. When I got there me and other cellmates noticed a leak coming from the shower. We alerted the C.O.'s and they informed us that they was aware. We noticed that that there was maggots or some type of larva coming out from under the shower with the water. After telling and showing a couple of officers, including Officer Corbin, weeks went by with no action. Finally, maintenance put some sealer around the outside edge of the shower, never fixing the leak and only sealing the maggots in. Now there still a slow leak of mildew water in the floor.

Claim 5: There was mold in the cell I am living in. They had some of my cellmates clean it without any masks or protection.

Claim 6: Lunch trays had black mold leading to other inmates complaints so they swapped some of the trays out with new black trays so it wouldn't be noticeable, but still have some dirty trays.

Claim 7: I was indigent for several months and they did not give me any stamps. They only gave me plain black envelopes. They said they would stamp them and honor them when I mailed them out. Months went by and I mailed out mail and they said I wasn't indigent anymore and wouldn't give me the stamp or stamps anymore for my envelopes.

As relief for these alleged violations of his rights, Plaintiff seeks damages.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled*

*on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**III.**

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Constitutional Claims

#### 1. "Pretrial" Claim

Plaintiff's first allegation is that he was "not allowed to speak to pretrial." Because the Court cannot discern what Plaintiff means by this allegation or how it shows that his constitutional rights were violated, the Court finds that it must be dismissed for failure to state a claim upon which relief may be granted.

#### 2. Disclosure of Information Claim

Plaintiff next asserts that his rights were violated when TCDC officials shared the results of his "drug screen" with his probation and parole officer without his permission.

The Court construes this as a right to informational privacy claim. "The Sixth Circuit . . . has developed and applied a different approach to assessing informational privacy claims" that "requires that the asserted privacy interest implicate a fundamental right." *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008); *see also Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2009) ("[T]he Sixth Circuit has held that the Constitution does not encompass a general right to nondisclosure of private information. Instead, the Sixth Circuit has continued to restrict the right of privacy to those rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'") (citation omitted). In *Lee v. City of Columbus, Ohio*, the Sixth Circuit surveyed its prior case law regarding a privacy interest in medical records:

> With regard to the dissemination of medical information, we have acknowledged that "a person possesses no reasonable expectation that his medical history will remain completely confidential[;] [t]his is not to say that a person has no interest in protecting, to some extent, the confidentiality of his medical records." *In re Zuniga*,

4

> 714 F.2d 632, 641 (6th Cir. 1983) (citing *Whalen v. Roe*, 429 U.S. [589], 606-07 [(1977)]. However, under our interpretation of privacy rights, we have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a "fundamental liberty interest" under the Constitution. *See, e.g.*, *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71(6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Wilson*, 517 F.3d at 428-29 (state prisoner who brought a § 1983 action did not have a fundamental privacy interest in the information contained in his DNA profile retained in state and national DNA-indexing systems); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate by prison officials "does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution" so as to state cognizable § 1983 action); *In re Zuniga*, 714 F.2d at 642 (affirming the enforcement of a subpoena duces tecum issued by a grand jury commanding psychotherapists to produce patient information); *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) (city ordinance that required employees on sick leave for more than thirty days to complete a form providing the City with medical information was legitimate request and did not invade former employee's right to privacy); *Gen. Motors Corp. v. Dir. of Nat'l Inst. for Occupational Safety*, 636 F.2d 163, 165-66 (6th Cir. 1980) (enforcement of a subpoena issued by the National Institute for Occupational Safety and Health for the production of medical records of automaker's employees, in conjunction with research on workplace health hazards, did not intrude upon protected privacy interests, where safeguards against the improper disclosure of the confidential information could be implemented).

636 F.3d 245, 260-61 (6th Cir. 2011). Moreover, Sixth Circuit has identified an informational-privacy interest of constitutional dimension only in very limited circumstances: 1) where the release of personal information could lead to bodily harm, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) (disclosure of undercover officers' personal information to defense counsel for alleged drug conspirators violated privacy rights because it "created a very real threat to the officers' and their family members' personal security and bodily integrity, and possibly their lives"); and 2) where the information released was of a sexual, personal, and humiliating nature, *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (disclosure of "highly personal and extremely humiliating details of a rape" violated privacy rights); *see also Kenny v. Bartman,* No. 16-2152, 2017 U.S. App. LEXIS 16640, at *17 (6th Cir. 2017) (repeating that the

Sixth Circuit has recognized a constitutionally-protected informational-privacy interest in only these two circumstances).

Here, there is no suggestion that the disclosure of Plaintiff's drug screen results by jail officials to his probation and parole officer fits into either of these two categories. Therefore, the Court concludes that Plaintiff has failed to state a claim based upon a violation of his right to informational privacy. *See Gold v. City of Sandusky*, No. 3:15 CV 2001, 2018 U.S. Dist. LEXIS 49567, at *36 (N.D. Ohio Mar. 26, 2018) (concluding based upon jurisprudence cited above that the release of the plaintiff's hospital treatment records to law enforcement in response to a subpoena did not violate the plaintiff's right to informational privacy).

### 3. COVID-19 Claim

The Court next turns to Plaintiff's allegation that when he became sick, with what he believed was COVID-19, the jail nurse "checked my temperature and vitals and put me write back in the cell giving me Mucinex and Tylenal, but never testing me for corona or separting me." Plaintiff seems to allege that because the nurse did not test him for COVID-19 or remove him from his cell, "everyone in the cell got sick" with COVID-19.

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on a convicted prisoner by acting with "deliberate indifference" toward the prisoner's serious medical needs. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle*, 429 U.S. at 104 (1976)). To prove a deliberate indifference claim, the plaintiff must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). First, under the objective component, there must be a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104.

Under the subjective component, a prisoner must "show that the prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). To satisfy the subjective component of the deliberate indifference test, the prisoner "must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler v. Madison Cnty.,* 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Spears v Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) (internal quotation marks omitted). "A defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Farmer*, 511 U.S. at 837. The Sixth Circuit has explained that "[t]his means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id*. In other words, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)) (internal quotation marks omitted).

Further, while "[a] plaintiff need not show that the defendant acted with the very purpose of causing harm," he "must show something greater than negligence or malpractice." *Winkler*, 893 F.3d at 891 (citing *Farmer*, 511 U.S. at 835); *see also Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 544 ("Mere negligence or malpractice is insufficient to establish an [Eighth] Amendment violation.") (citation omitted)). Thus, with respect to deliberate indifference claims against health care providers, the Supreme Court has explained that a claim of mere medical negligence will not satisfy this subjective element. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Here, the Court need not determine whether Plaintiff's allegations show that he had an objectively serious medical need because it concludes that they fail to show deliberate indifference. As explained by another court in analyzing whether a failure to test for COVID-19 could constitute deliberate indifference:

> Plaintiff in this case does not allege a complete lack of medical treatment; he asserts he did not receive the specific test he desired. . . .  At most, plaintiff alleges his disagreement with the decision not to provide him a COVID-19 test and he alleges that he believes he had symptoms of the disease.  But plaintiff's disagreement with the course of his medical assessment and decision-making about the tests necessary for diagnosis is insufficient to establish the deliberate indifference necessary to support an Eighth Amendment claim.

*Laferriere v. Bodwell*, No. 3:21-cv-05174-BHS-TLF, 2022 U.S. Dist. LEXIS 26448, at *9 (W.D. Wash. Jan. 11, 2022) (citation omitted).  Another court has also found that a plaintiff's allegation that the defendant doctors' decision not to test the plaintiff for COVID-19, even though he requested such a test and was experiencing COVID-19 symptoms, failed to establish deliberate indifference because the record showed the plaintiff was receiving medical treatment for his symptoms.  *London v. Dzurenda*, No. 20-CV-1991(JS)(SIL), 2022 U.S. Dist. LEXIS 139656, at *18 (E.D.N.Y. Aug. 5, 2022).  There the court concluded that the plaintiff's allegations amounted to no more than a difference of opinion and between the plaintiff and the defendant doctors regarding his medical treatment.  *Id*.

As in these cases, Plaintiff's allegations show that he received medical treatment for the symptoms he was experiencing, and Plaintiff does not explain how a positive COVID-19 test would have altered his course of treatment.  Thus, the Court concludes that the nurse's decision not to test Plaintiff for COVID-19 constitutes no more than "a difference of opinion between a prisoner and a doctor over diagnosis or treatment" and therefore "fails to state an Eighth

Amendment claim of deliberate indifference to a serious medical need." *Carr v. Parker,* No. 98-6395, 1999 U.S. App. LEXIS 32688, at *4 (6th Cir. 1999).

Moreover, to the extent that Plaintiff may be claiming that the nurse was deliberately indifferent to his cellmates' serious medical needs by failing to test Plaintiff for COVID-19 and remove him from their cell, Plaintiff cannot assert claims on behalf of other inmates. "Although 28 U.S.C. § 1654 provides that 'in all courts of the United States the parties may plead and conduct their own cases personally or by counsel, that statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th. Cir. 2002).

For these reasons, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### 4. Conditions-of-Confinement Claims

Plaintiff next makes allegations regarding his conditions of confinement at TCDC. He first alleges that he and other inmates noticed that there were "maggot or some type of larva coming out from under the shower with the water." He states that when they reported this issue to a TCDC officer, "weeks went by with no action," but that "[f]inally, maintenance put some sealer around the outside edge of the shower, never fixing the leak and only sealing the maggots in." Plaintiff also alleges that there was mold in his cell and black mold on TCDC's food trays.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam)

(quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* In other words, a condition must be sufficiently serious so as to constitute a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). And, as above, the subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety. *Wilson v. Seiter*, 501 U.S. 294, 297, 303 (1991).

In light of the above jurisprudence, several courts have held that the mere presence of insects in cells fails to state an Eighth Amendment claim. *See, e.g.*, *Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 U.S. Dist. LEXIS 164561, at *6 (W.D. Ky. Nov. 19, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measures of life's necessities.") (internal quotations omitted); *Williams v. Philips*, No. 1:10-cv-131, 2012 U.S. Dist. LEXIS 121519, at *20 (E.D. Cal. Aug. 27, 2012) (holding that the mere presence of annoying insects does not rise to an Eighth Amendment violation and stating that the plaintiff "is not living at the Ritz; he is in prison and the burden of

swatting 10 or even 25 flies per day is not cruel and unusual punishment"); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (holding that allegation that a prisoner's cell is "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" falls short of demonstrating the existence of a substantial risk of serious harm).

Plaintiff's conclusory allegations of mold in his cell also fails to describe a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.  In *Rogers v. McClaren*, No. 1:20-cv-263, 2020 U.S. Dist. LEXIS 112263 (W.D. Mich. June 26, 2020), the court held that mere awareness of black mold on the floor of the shower failed to state an Eighth Amendment claim. In so holding, the court noted as follows:

> Exposure to black mold that is airborne and can be inhaled into the lungs may be sufficiently serious to give rise to an Eighth Amendment claim, but exposure to black mold through skin contact is a different matter. *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), with *Causey v. Allison*, No. 1:08CV155-RHW, 2008 U.S. Dist. LEXIS 72071, at *3-4 (S. D. Miss. Sept. 8, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 U.S. Dist. LEXIS 77859, at *8 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate); *Morales v. White*, No. 07-2018, 2008 U.S. Dist. LEXIS 80659 (W.D. Tenn. Oct. 10, 2008) (holding that allegations that black mold is located at some place within a housing unit is not sufficient to support an Eighth Amendment claim).

*Id*. at *20-21.

Thus, because Plaintiff does not allege that the presence of mold in his cell caused him a health problem or created a substantial risk to his health, the Court finds that this claim must be dismissed for failure to state a claim upon which relief may be granted.  *Id*.

Moreover, although Plaintiff claims that TCDC's previous food trays had black mold on them, he also alleges that those trays were replaced once officials became aware of this complaint. Thus, even if this constituted an objectively serious condition of confinement, the complaint fails

to allege that any TCDC official was deliberately indifferent to this condition. Moreover, although Plaintiff alleges that the some of the new food trays are still "dirty," "the occasional dirty food tray [is not] a condition sufficiently serious as to be a substantial risk of serious harm." *Kanatzer v. Cole*, No. 17-3115-SAC, 2017 U.S. Dist. LEXIS 198067, at *23 (D.C. Kan. Dec. 1, 2017).

For these reasons, the Court will dismiss Plaintiff's conditions-of-confinement claims for failure to state a claim upon which relief may be granted.

### 5. Denial of Stamps Claim

Finally, the Court turns to Plaintiff's claim that TCDC officials did not provide him with stamps for his mail, even when was indigent. As observed in *Bergeron v. Mackie*, "the Sixth Circuit repeatedly has recognized that indigent prisoners do not have a constitutional right to obtain free postage to send non-legal mail." No. 1:16-cv-1060, 2016 U.S. Dist. LEXIS 145347, at *13 (W.D. Mich. Oct. 20, 2016); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Even as an indigent inmate, Argue had no constitutional right to free postage for nonlegal mail.") (citing *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002); *Brown v. Crowley*, No. 99-2216, 2000 U.S. App. LEXIS 21213, at *9 (6th Cir. Aug. 10, 2000) ("The First Amendment does not compel prison officials to provide indigent prisoners with unlimited free postage and materials for non-legal mail."). Moreover, Plaintiff does not allege that the denial of stamps in any way affected his ability to access the courts.[3]

---

[3] It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Bounds*, the Court noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id*. at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. Indeed, to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff makes no such allegations here.

Thus, the Court finds that this claim must also be dismissed for failure to state a claim upon which relief may be granted.

### B. Defendants

#### 1. Official-Capacity Claims

Plaintiff sues TCDC Jailer Penick and City of Elkton Mayor Green in their official capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claim against Defendant Penick is actually against Todd County and his official-capacity claim against Defendant Green is actually against the City of Elkton.

When a § 1983 claim is made against a municipality, such as Todd County or the City of Elkton, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell,* 436 U.S. at 691. Here, the Court has concluded that any harm Plaintiff suffered was not caused by a constitutional violation. Moreover, Plaintiff does not assert that any alleged constitutional violation was the result of a custom or policy implemented or endorsed by Todd County or the City of Elkton.

Thus, Plaintiff's official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Individual-Capacity Claim

Plaintiff also sues TCDC Jailer Penick in his individual capacity. Because Plaintiff makes no specific allegations against Defendant Penick, the Court assumes that Plaintiff seeks to hold him liable in his individual capacity for the conditions described in the complaint based upon his supervisory role as the TCDC Jailer. However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Thus, because the complaint contains no allegations against Defendant Penick, the Court finds that the individual-capacity claim against him must also be dismissed for failure to state a claim upon which relief may be granted.

## IV.

The Court will enter a separate Order dismissing this action for the reasons set forth above.

Date: November 3, 2022

Greg N. Stivers, Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Todd County Attorney
4416.011

15